IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

01 SEP 25 PM 4: 14

| | | |
|---|---|---|
| ANTOINE DEMETRIOUS DRAKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV-99-BU-0887-M |
| | ) | |
| ALABAMA BOARD OF PARDONS | ) | |
| AND PAROLES, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ENTERED
SEP 25 2001

MEMORANDUM OF OPINION

This is a civil action filed pursuant to 42 U.S.C. § 1983 in which the plaintiff, Antoine Demetrious Drake, alleges that his constitutional rights were violated while he was incarcerated at St. Clair Correctional Facility in Springville, Alabama. Plaintiff was released on parole and is no longer in the custody of the Alabama Department of Corrections. The *pro se* complaint was filed on April 9, 1999, naming as defendants the Alabama Board of Pardons and Paroles, Leigh Allyson Benton[1] and Wade H. Wofford.[2] Plaintiff seeks monetary damages and release on parole.

On April 3, 2000, the court entered an Order for Special Report (document number 16) directing that copies of the complaint in this action be forwarded to each of the named defendants and requesting that they file a special report responding to the factual allegations of the complaint. On June 5, 2000, defendants Leigh Allyson Benton and Wade H. Wofford filed their special report

---

[1] The court notes that plaintiff incorrectly identified defendant Benton as Alice Bennett in his complaint.

[2] It is noted that plaintiff misspelled defendant Wofford's last name in his complaint. Defendant Wofford last name was incorrectly spelled Wafford.

(document number 20) attaching the affidavits of defendants Benton and Wofford. On July 7, 2000, defendant the Alabama Board of Pardons and Paroles filed a special report (document number 25) attaching documents. Plaintiff filed responses (documents number 22 and 23) on June 21, 2000 and June 27, 2000. By order of August 30, 2001 (document number 29), the parties were notified that the special reports filed by the defendants would be construed as motions for summary judgment, and the plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules of Civil Procedure.*

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is

entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

## FACTS

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, have been taken in a light most favorable to the plaintiff. Plaintiff was convicted of Trafficking Crack Cocaine and Possession of an Uncontrolled Substance Without a Tax Stamp (plaintiff's complaint attached page one). He was sentenced to twenty years and five years, respectively, with the sentences to run concurrently (plaintiff's complaint attached page one). Plaintiff is a first time offender. Plaintiff entered the custody of the Alabama Department of Corrections on or about February 8, 1994 (plaintiff's complaint attached page one). Plaintiff was denied parole on July 22, 1995 and again on July 17, 1996 (plaintiff's complaint attached page one). Plaintiff was granted parole on or about July 9, 1997 (plaintiff's complaint attached page two). On or about July 10, 1997, while waiting for release, plaintiff decided to step down from the Therapeutic Community Drug Rehabilitation Program (hereinafter referred to as the TC Program), a program he

3

had originally volunteered to participate in (plaintiff's complaint attached page two). On July 11, 1997, defendant Benton called for plaintiff to report to the R-1 dayroom so that she could speak with him regarding his reported decision to quit the TC Program and his reported negative attitude towards his peers (defendant Benton's affidavit page one). It is the policy of the TC Program that when an inmate quits the program, he must communicate his decision directly to the staff (defendant Wofford's affidavit page one). Plaintiff refused to come to the R-1 dayroom, so defendant Benton went to personally inform plaintiff that if he refused to comply with her direct order, she would be forced to write him a disciplinary (defendant Benton's affidavit page one). Plaintiff accompanied defendant Benton to the dayroom where she asked him to confirm to her that he had in fact quit the TC Program (defendant Benton's affidavit page one). Plaintiff confirmed that he had quit the program and informed defendant Benton that she could "take this TC program and shove it up her a\_\_." Defendant Benton asked plaintiff why he was so angry and he stated that he had learned from his family via a telephone call that he had made parole and that he did not "need this f\_\_\_ing program" (defendant Benton's affidavit page one and defendant Wofford's affidavit page one). Defendant Benton informed plaintiff that she would notify the parole board of both his negative attitude and his inappropriate behavior. Defendant Benton then called the office of Alabama Board of Pardons and Parole member Judith O'Connor and spoke with her secretary, Lorna Hayes (plaintiff's complaint attached page two and defendant Benton's affidavit page one). Defendant Benton told plaintiff that Ms. O'Connor had specifically requested from her any information that she thought Ms. O'Connor might need to know on any inmate who was to be considered for parole (defendant Benton's affidavit page two). It is not uncommon for defendant Benton to receive calls from Pardons and Parole requesting information on an inmate's status in treatment or otherwise

(defendant Benton's affidavit page two). Defendant Benton informed Ms. Hayes of plaintiff's drastic change of attitude and behavior (defendant Benton's affidavit page one). Defendant Benton then made a note of the call in plaintiff's treatment file and dismissed him from the dayroom (defendant Benton's affidavit page one). On or about July 23, 1997, plaintiff was notified by the parole board that he had again been denied parole and that he would be reconsidered for parole in July, 1998 (plaintiff's complaint attached page three). Another inmate, Michael Carmichael, stepped down from the program about the same time as plaintiff, but defendants Benton and Wofford did not contact the parole board about him (plaintiff's complaint attached page three). Plaintiff was granted parole again on or about July 22, 1998, but it was again revoked on February 26, 1999 (plaintiff's complaint attached page five).

## DISCUSSION

### The Alabama Board of Pardons and Paroles

Plaintiff has named the Alabama Board of Pardons and Paroles as a defendant. The court notes at the outset that all of plaintiff's claims with respect to the Alabama Board of Pardons and Paroles are due to be dismissed. It is well settled that the Eleventh Amendment to the United States Constitution bars § 1983 claims in federal court against the state or an agency of the state. *Alabama v. Pugh*, 438 U.S. 781 (1978); *see also Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). As the Supreme Court has stated:

> [T]here can be no doubt . . . that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit. *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292 (1937). Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, sec. 14, of the

> Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity."

*Alabama v. Pugh*, 438 U.S. at 782. "Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court." *Gamble v. Florida Dept. of Health & Rehabilitative Services*, 779 F.2d 1509, 1511 (11th Cir. 1986) (*citing Edelman v. Jordan*, 415 U.S. 651 (1974)). The Eleventh Amendment applies to claims for injunctive and declaratory relief as well as claims for monetary relief. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. at 100; *Alabama v. Pugh*, 438 U.S. at 782; *Edelman v. Jordan*, 415 U.S. at 662-71; *Darne v. Wisconsin Department of Revenue*, 137 F. 3d 484, 487 (E.D. Wis. 1995), *cert. denied*, 525 U.S. 967 (1998). Accordingly, plaintiff cannot maintain a Section 1983 action against the Alabama Board of Pardons and Paroles and the Alabama Board of Pardons and Paroles is entitled to summary judgment.

<u>Defendants Benton and Wofford</u>

Plaintiff claims that defendants Benton and Wofford violated his constitutional right to due process when they reported to the Alabama Board of Pardons and Paroles that he had withdrawn from the Therapeutic Community Drug Rehabilitation Program. He claims that the Alabama Board of Pardons and Paroles rescinded its decision to grant him parole based upon that information. The United States Supreme Court has made it very clear that "there is no 'constitutional or inherent right' to parole." *Hewitt v. Helms*, 459 U.S. 460, 467 (1983) (*quoting Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979)). Consequently, a state is under no obligation to establish a parole system at all. *Greenholtz*, 442 U.S. at 7. Even if a state elects to establish a parole system, it is

under no obligation to specifically define the conditions for release. *Id.* at 8. It is clearly constitutionally permissible for a state to establish a parole system where the granting of parole is a matter of discretion for the parole board. Section 15-22-26, *Code of Alabama* (1975) establishes such a system. *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991). It is therefore clear that the statute is constitutional. The court further notes that because § 15-22-26 "provides that parole may be granted at the Board's discretion," that section "does *not* confer a liberty interest in parole that is protected by the Due Process Clause." *Monroe v. Thigpen*, 932 F.2d at 1441 (emphasis added). Clearly, plaintiff was not entitled to due process prior to the parole board's decision to rescind its decision to grant him parole because he had no liberty interest in parole. Therefore, defendants Benton and Wofford are entitled to summary judgment with respect to plaintiff's claim that they denied him due process when they informed the Alabama Board of Pardons and Paroles of his decision to withdraw from the TC Program.

As an additional basis for the dismissal of all claims for money damages against defendants Benton and Wofford,[3] they are entitled to the defense of qualified immunity. Government officials exercising a discretionary function are entitled to qualified immunity from damages unless their acts or decisions contravene clearly established constitutional or statutory rights of which a reasonable official should have knowledge. *See Mitchell v. Forsyth*, 472 U.S. 511 (1985); *Harlow v. Fitzgerald*,

---

[3] The court notes that plaintiff's request for release on parole has been rendered moot due to the fact that he has already been released on parole. Further, neither defendant Benton nor defendant Wofford would have had the authority to release plaintiff on parole even if he had not already been released. In addition, release from confinement is not relief which can be granted in an action filed pursuant to 42 U.S.C. § 1983. A prisoner seeking injunctive relief which lessens the period of confinement must bring the claim in a habeas corpus petition after he has exhausted his available state remedies. *Gwin v. Snow*, 870 F.2d 616 (11th Cir. 1989).

7

457 U.S. 800 (1982). The "contours of the rights must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 636, 641 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As the Eleventh Circuit has explained, "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates the law *in the circumstances*." *McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995) (quoting *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc) (emphasis in original)). Where the act or decision complained of was within a government official's discretionary function, the burden of proof is on the plaintiff to demonstrate that the official violated clearly established constitutional law. *See Sammons v. Taylor*, 967 F.2d 1533 (11th Cir. 1992) (citing *Zeigler v. Jackson*, 716 F.2d 847 (11th Cir. 1983)); *McCoy v. Webster*, 47 F.3d at 407.

There can be no question that a determination that the Board of Pardons and Paroles should be informed that an inmate has withdrawn from a rehabilitation program and that his attitude and behavior have changed was within the discretionary functions of defendants Benton and Wofford as a Drug Program Specialist and a Drug Treatment Counselor, respectively, at an Alabama prison. Thus, the burden has shifted to plaintiff to show that the decisions made by defendants Benton and Wofford violated clearly established constitutional rights "in the circumstances."[4]

---

[4] "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U. S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998) (quoting *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826-27 n.4 (11th Cir. 1997)).

Plaintiff has not pointed to, nor has the court found, any cases that hold that a Drug Program Specialist or a Drug Treatment Counselor at a prison should not and cannot contact the Alabama Board of Pardons and Paroles to inform the board that an inmate who is being considered for release on parole has withdrawn from a rehabilitation program and that his attitude and behavior has changed even if the inmate's participation in the program was voluntary. The court has found no cases so holding and clearly establishing that defendants Benton and Wofford should have known that contacting the Alabama Board of Pardons and Paroles about plaintiff's withdrawal from the TC Program and about his change in behavior and attitude violated plaintiff's rights. Lacking such clearly established law, defendants Benton and Wofford are entitled to qualified immunity. The claims for money damages against defendants Benton and Wofford are therefore due to be dismissed on the basis of qualified immunity.

Plaintiff claims further that he "was told publicly and privately by counselor he was dislike, because of his Religious believes (sic)". The defendants are entitled to summary judgment with respect to this claim. Plaintiff's claim is due to be dismissed because plaintiff's allegations are vague and conclusory, *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984), and without factual basis, *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976). Plaintiff does not state the name of the counselor who stated that he was disliked because of his religious beliefs nor has plaintiff presented any facts to show that this had anything to do with defendants Benton and Wofford's decision to contact the Alabama Board of Pardons and Paroles. Moreover, both defendant Benton and defendant Wofford stated in their sworn affidavits that they never told plaintiff or any other inmate that they were disliked for any reason including because of their religious beliefs. Plaintiff failed to dispute these sworn statements of defendants Benton and Wofford.

Plaintiff next claims that defendants Benton and Wofford discriminated against him in violation of the equal protection clause when they reported the fact that he had withdrawn from the TC Program to the Alabama Board of Pardons and Paroles. Plaintiff claims that another inmate, Michael Carmichael, stepped down from the program on or about the same time as plaintiff. He claims that although inmate Carmichael "made some very profound remarks about he was going to society to get high and have fun," defendants Benton and Wofford "did not see it fit to call board (Parole) on Mr. M. Carmichael." Defendant Benton states in her sworn affidavit that inmate Carmichael did in fact quit the TC Program on June 3, 1997, however, he never made the comments plaintiff claims or any similar comments to her nor was it ever reported to her that inmate Carmichael had made any similar comments to anyone else. Defendant Wofford states in his sworn affidavit that he is aware that inmate Carmichael quit the TC Program approximately one month prior to plaintiff quitting, however, he has no knowledge of inmate Carmichael behaving inappropriately after he quit or of inmate Carmichael making comments about planning to use drugs after his release. Plaintiff does not dispute these statements nor does he allege that inmate Carmichael made the statements alleged in the presence of the defendants or acted in any way inappropriately in the presence of the defendants. While it is undisputed that plaintiff behaved very inappropriately upon confirming to defendants Benton and Wofford that he had indeed withdrawn from the TC Program.

Defendants Benton and Wofford are entitled to summary judgment with respect to plaintiff's claim that they discriminated against him in violation of the equal protection clause when they reported the fact that he had withdrawn from the TC Program to the Alabama Board of Pardons and Paroles and did not contact the Alabama Board of Pardons and Paroles when inmate Carmichael

withdrew from the program. Plaintiff's generalized claim of prejudice, or discrimination, does not state a claim in violation of the equal protection clause of the Constitution. In *Oyler v. Boles*, 368 U.S. 448, 456 (1962), the United States Supreme Court indicated that to show a constitutional violation there must be a showing of selection deliberately "based upon an unjustifiable standard such as race, religion or other arbitrary classification." The mere allegation that defendants Benton and Wofford did not contact the Alabama Board of Pardons and Paroles when inmate Carmichael (a white inmate) withdrew from the TC program even though they contacted the Alabama Board of Pardons and Paroles when plaintiff (a black inmate) withdrew from the program does not show any deliberate action against plaintiff by defendants based upon an unjustifiable standard when it is undisputed that plaintiff acted inappropriately in the presence of defendants Benton and Wofford when confirming his decision to withdraw from the program while inmate Carmichael did not.

Plaintiff's final claim is that he was again granted parole on or about July 22, 1998, but while he was awaiting the finalization of plans concerning his living arrangements and employment, his parole was again revoked on or about February 26, 1999. Plaintiff contends that he believes defendants Benton and Wofford might have been involved in this denial of parole. The defendants are entitled to summary judgment with respect to this claim. Plaintiff's allegations are vague and conclusory, *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984), and without factual basis, *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

The Court EXPRESSLY FINDS that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law. Accordingly, for the reasons stated above,

the defendants' motions for summary judgment are due to be GRANTED and this action DISMISSED WITH PREJUDICE.

A separate final judgment consistent with this Memorandum of Opinion will be entered contemporaneously herewith.

DATED this 25th day of September, 2001.

_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE